s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

| | | |
|---|---|---|
| HBJD Corporation<br>c/o E&S Registered Agent, LLC<br>One SeaGate, 24th Floor<br>Toledo, Ohio 43604 | : <br> : <br> : <br> : | Case No. 21-12115 <br><br> Hon. _____ <br><br> **COMPLAINT** |
| and | : | |
| JA Doyle, LLC<br>c/o Jeremiah P. O'Brien<br>5800 Monroe Street, Building F<br>Sylvania, Ohio 43560 | : <br> : <br> : <br> : | Mark W. Sandretto (P74007)<br>Charles E. Hatch (P84220)<br>EASTMAN & SMITH LTD.<br>One SeaGate, 24th Floor<br>P.O. Box 10032<br>Toledo, Ohio 43699-0032 |
|       Plaintiffs, | : | Telephone:  (419) 241-6000<br>Fax:  (419) 247-1777 |
| vs. | : | E-mail: mwsandretto@eastmansmith.com<br>          cehatch@eastmansmith.com |
| Craig M. Sortor<br>12331 Strasburg Road<br>LaSalle, Michigan 48145 | : <br> : <br> : | Attorneys for Plaintiffs HBJD<br>Corporation and JA Doyle, LLC |
| and | : | |
| Jamie L. Sortor<br>12331 Strasburg Road<br>LaSalle, Michigan 48145 | : <br> : <br> : | |
|       Defendants. | | |

s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

For their Complaint against Defendants Craig M. Sortor ("**Craig Sortor**") and Jamie L. Sortor ("**Jamie Sortor**") (collectively, the "**Defendants**"), Plaintiffs HBJD Corporation ("**HBJD**") and JA Doyle, LLC ("**JA Doyle**" and together with HBJD "**Plaintiffs**") state as follows:

5824221.7

## THE PARTIES, JURISDICTION, AND VENUE

1. HBJD is an Ohio corporation with its principal place of business in Lucas County, Ohio.

2. JA Doyle is an Ohio limited liability company with its principal place of business in Lucas County, Ohio. All of JA Doyle's members are residents of the State of Ohio.

3. Defendants Craig Sortor and Jamie Sortor are individuals who reside and are domiciled in Monroe County, Michigan.

4. This Court has original jurisdiction of claims brought under 15 U.S.C. § 1114 and §1125.

5. There is complete diversity of the parties and the amount in controversy exceeds $75,000.00 and, therefore, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

## STATEMENT OF THE CASE

6. This case involves a clear breach of contract by Defendants, which escalated to include tortious interferences and trademark infringement claims due to Defendants' misconduct. HBJD substantially performed its duties under a building contract between it and Defendants, completing construction of a custom home following the date of commencement in approximately 6.9 months, which is extraordinary considering the size and finishes of the home, despite the Defendants requesting no less than 15 change orders after the commencement date, and despite operating in an unprecedented environment driven by COVID-19 and significant supply chain and labor shortage challenges. Defendants took possession of the custom home built for them by HBJD and now live in it but refuse to pay the contract price in full. Furthermore, in an attempt to leverage a reduction of the contract price, Defendants publicly use Plaintiffs' valuable trademarks in

commerce to disparage Plaintiffs. Plaintiffs are left with no choice but to petition this Court for appropriate redress.

## FACTS COMMON TO ALL CAUSES OF ACTION

7. Plaintiffs incorporate by reference the allegations contained in paragraph 1 through 6, above, as if fully restated herein.

8. JA Doyle owns the trademarks HBJD, HOMES BY JOSH DOYLE® and the design mark  (hereinafter HOMES BY JOSH DOYLE Design®) (collectively, "**Trademarks**"). HBJD is an authorized licensee, using the Trademarks in commerce to the benefit of licensor JA Doyle. Plaintiffs have used the Trademarks in commerce continuously since at least 2008 in connection with the custom construction of homes and related architectural and graphic design services. The Trademarks are inherently distinctive and have acquired distinctiveness through Plaintiffs' extensive use and promotion in commerce.

9. Plaintiffs have invested substantially in the Trademarks, as evidenced by JA Doyle's federal trademark registrations in the U.S. Patent and Trademark Office for the word mark HOMES BY JOSH DOYLE® (U.S. Registration No. 5,512,197) and HOMES BY JOSH DOYLE Design® (U.S. Registration No. 5,512,218). The registrations are valid and subsisting and constitute conclusive evidence of the validity of the marks and of JA Doyle's ownership of and exclusive right to use the mark for the services specified therein. In addition, JA Doyle filed an application in the U.S. Patent and Trademark Office seeking registration for its mark HBJD (U.S. Application Serial No. 90/018,501). True and correct copies of Plaintiff's federal trademark registrations and the filing receipt for its pending application are attached as *Exhibit 1*.

10. HBJD entered into a Home Construction Contract with Defendants on or about October 13, 2020 (the "**Contract**") for the construction of a single-family residence consisting of approximately 3,559 square feet of enclosed space located at 12331 Strasburg Road in Lasalle, Monroe County, Michigan ("**Residence**") for a total project sum amount of Four Hundred Seventy-Five Thousand Three Hundred Sixty-Six Dollars and Zero Cents ($475,366.00). A true and accurate copy of the Contract is attached hereto as *Exhibit 2*.

11. HBJD commenced construction on November 19, 2020, and substantially performed under the Contract, substantially completing construction of the Residence on or about June 15, 2021.

12. On or about June 15, 2021, all final change orders for the construction were issued and Defendants' lender completed a final inspection of the construction for determination of the final payment.

13. Despite their lender's completion, Defendants failed and refused to authorize the final draw in payment and satisfaction of the full contract price.

14. A Certificate of Occupancy has not yet been issued for the Residence because the exterior grading, which is a contractual responsibility of the Defendants pursuant to Section 6.3 of the Contract, has not been sufficiently completed in a manner to pass inspection.

15. Despite the absence of a Certificate of Occupancy, Defendants moved into the Residence and now occupy the same.

16. Defendants have restricted access by HBJD to the Residence since July 2021.

17. Defendant Craig Sortor attempted to leverage a reduction of the final Contract price by threatening to make negative public comments about HBJD and the character of its principal

unless HBJD agreed to provide concessions under the Contract, including a credit of no less than $25,000.00 toward the final payment due under the Contract.

18. Defendant Craig Sortor partially followed through on the aforementioned threat, creating a private Facebook group called 'Customers of HBJD', through which Defendant Craig Sortor made and encouraged negative and defamatory comments about HBJD. On information and belief, that group was set up intentionally by Defendant Craig Sortor to look like it is an officially sanctioned advice forum created and operated by HBJD. Namely, the profile for the Facebook group created by Defendant Craig Sortor uses the trademark HBJD and an exact replica of the logo widely known to be associated with Plaintiffs' business - HOMES BY JOSH DOYLE Design®. In addition, the profile incorporates Plaintiffs' telephone number. Thus, consumers scanning through groups in Facebook only see elements that appear to be legitimate elements associated with Plaintiffs' business.

19. To join the afore-referenced group, a prospective member has to confirm whether he/she is an employee or family/friend of an employee of HBJD. If the prospective member responds affirmatively, he/she is denied membership to the group.

20. On information and belief, Defendant Jamie L. Sortor has acted in concert with her spouse, Defendant Craig Sortor, in creating and administering the Facebook group known as 'Customers of HBJD' and is either directly infringing the Trademarks or is contributing to the infringement of the Trademarks.

21. On September 2, 2021, Plaintiffs sent correspondence to Defendants objecting to the use of the Trademarks in the Facebook group. A true and accurate copy of the September 2, 2021 letter is attached hereto as *Exhibit 3*. Defendants refused to cease use of the Trademarks.

## COUNT I – BREACH OF CONTRACT

22.     Plaintiffs incorporate by reference the allegations contained in paragraph 1 through 21 as if fully restated herein.

23.     HBJD entered into the Contract with Defendants on October 14, 2020 for the construction of the Residence for a total project sum amount of Four Hundred Seventy-Five Thousand Three Hundred Sixty-Six Dollars and Zero Cents ($475,366.00).

24.     HBJD substantially performed under the Contract by constructing the Residence in accordance with the Contract and specifications agreed upon by the Parties.

25.     Pursuant to Section 8.1 of the Contract, HBJD issued via Defendants' lender a final draw request in the amount of $123,595.16 in June 2021.

26.     Despite Defendants' lender completing its final inspection, Defendants have failed to authorize their lender to make final payment in violation of Section 8.1 of the Contract.

27.     As a result of issued Change Orders, the final draw under the Contract owing to HBJD is appropriately reduced by $39,570.93 and, accordingly, Defendants owe HBJD the outstanding sum amount of $84,024.23. True and accurate summaries of issued Change Orders are attached hereto as *Exhibit 4*.

28.     In addition, Defendants took possession of and occupied the Residence, and continue to occupy the Residence, prior to issuing full payment of the Contract price, violating Section 9 and Section 13.4 of the Contract.

29.     In its letter dated September 2, 2021, in addition to objecting to the use of its Trademarks, HBJD demanded payment of the $84,024.23 amount due under the Contract. *See Exhibit 3.*

30. Despite HBJD's demand, Defendants have failed and refused to pay the amount due under the Contract.

31. HBJD has suffered damages in the amount of at least $84,024.23 as a result of Defendants' breaches of the Contract, including their failure to pay the amounts due under the Contract.

## COUNT II – PROMISSORY ESTOPPEL

32. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 31 above, as if fully restated herein.

33. HBJD hereby brings this claim under Fed.R.Civ.P. 8(d) and/or MCR 2.111(A)(2)(a) in the alternative to its claim for breach of contract.

34. On October 14, 2020, Defendants agreed to compensate HBJD in the amount of $475,366.00 for HBJD's services in constructing the Residence.

35. Defendants should have reasonably expected that their promise of compensation would induce HBJD to construct the Residence.

36. HBJD reasonably relied upon Defendants' representations of compensation which, in fact, induced HBJD to construct the Residence.

37. HBJD, in reasonable reliance upon Defendants' representations, substantially performed and completed the construction of the Residence.

38. Defendants failed to compensate HBJD for the full amount originally promised.

39. Defendants unjustly occupied the Residence, despite their failure to fully compensate Plaintiff.

40. HBJD has suffered damages in the amount of at least $84,024.23 as a result of Defendants' failure to pay the amounts promised to HBJD.

## COUNT III – UNJUST ENRICHMENT

41. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 40, above, as if fully restated herein.

42. On October 14, 2020, Defendants agreed to compensate HBJD in the amount of $475,366.00 for HBJD's services in constructing the Residence.

43. HBJD, in reasonable reliance upon Defendants' representations, substantially performed and completed the construction of the Residence.

44. Defendants failed to compensate HBJD for the full amount originally promised.

45. Defendants unjustly occupied the Residence, despite their failure to fully compensate HBJD.

46. Defendants have retained the benefit of occupying the Residence, constructed by HBJD, while retaining the outstanding amount owed in the amount of at least $84,024.23.

47. Defendants have been unjustly enriched as a result of their occupation of the Residence, despite their continued retention of the outstanding amount owed to HBJD and has caused substantial inequity to HBJD.

## COUNT IV – DECLARATORY JUDGMENT

48. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 47, above, as if fully restated herein.

49. Pursuant to Section 13.4 of the Contract, Defendants were bound to the following provisions pertaining to the completion and inspection of the Residence:

> 13.4. NOTICE OF COMPLETION AND INSPECTION PROCESS. The Contractor shall communicate a notice to the Owner in writing or electronically upon completion of the New Home (the "Completion Notice"). The Owner shall have seven (7) days from receipt of the Completion Notice to inspect the New Home for incomplete Work and/or defects and ten (10) days from receipt of the Completion Notice to deliver to the Contractor a written list of all incomplete Work and/or defects that must be corrected before the Owner will accept the New Home. Upon receipt of such list the Contractor will confer with the Owner and the parties shall agree upon a punch list that must be signed by both parties. There will be no deductions, set offs or escrows from the Contract Price or other sums owed to the Contractor pursuant to this Contract for any items on the agreed upon punch list. The Owner may not take possession of and commence occupancy of the New Home prior to completion of the punch list without the Contractor's express written authorization. Failure of the Owner to deliver to the Contractor a list of incomplete Work and/or defects within ten (10) days from receipt of the Completion Notice will constitute approval the Work and acceptance of the New Home as fully completed. Omission from the list of any incomplete Work, apparent defects or defects that should be apparent on reasonable inspection will constitute acceptance of Work and the New Home with those defects. On correction of timely listed defects and completion of any incomplete Work to the reasonable satisfaction of the Owner, will constitute final completion of the new home.

50. HBJD complied with Section 13.4 of the Contract and communicated to Defendants that construction of the Residence was completed.

51. Beginning in late March 2021, Defendants began providing HBJD with "punch list" items.

52. Defendants have taken possession of and have commenced occupancy of the Residence prior to completion of an agreed upon "punch list" and without the express written authorization of HBJD, and without full payment of the Contract Price, contrary to Section 13.4 of the Contract.

53. Pursuant to Section 13.4 of the Contract, Defendants' failure to provide HBJD with a completed written list of incomplete work and/or defects within ten (10) days of HBJD's notice of completion constitutes Defendants' approval and acceptance of the Residence as fully completed.

54. In addition to Defendants' breach of Section 13.4 of the Contract, Defendants breached Section 9.3 of the Contract, which provides:

> 9.3. MOVE-IN AND OCCUPANCY. Both the Contractor and the Owner agree that occupancy and possession of the New Home shall be given to the Owner only upon payment of the total Contract Price pursuant to Paragraphs 2 and 8, along with all amounts due to the Contractor for all changes or additions as provided in Paragraph 5. Occupancy of the New Home by the Owner prior to the payment in full to the Contractor as aforesaid shall constitute complete acceptance by the Owner, without any further obligation on the part of the Contractor to give the warranty provided for in Paragraph 17 hereof, except that the Owner and the Contractor may agree to earlier occupancy pursuant to Paragraph 20 hereof.

55. Defendants occupied and/or have moved personal property into the Residence prior to providing HBJD with the total Contract Price, despite HBJD's final draw request.

56. Defendants occupied and/or have moved personal property into the Residence without HBJD's express authorization.

57. In accordance with the express terms of Section 9.3 of the Contract, Defendants' possession and occupation of the Residence without making full payment of the Contract Price, "constitute[s] complete acceptance" of the Residence by Owner.

58. Despite Defendants' acceptance of the Residence pursuant to the express terms of the Contract, HBJD continued in good faith to coordinate inspection and/or completion of Defendants' "punch list" items. Defendants, however, have denied HBJD access to the Residence to inspect or complete any "punch list" items.

59. There is an actual controversy among the parties regarding their rights and obligations under the Contract and HBJD is entitled to an Order declaring that:

    a. Defendants were required to submit a complete list of all incomplete work and/or defects to HBJD in accordance with Section 13.4 of the Contract;

    b. Defendants were not entitled to occupy the Residence without payment of the amounts due under the Contract;

    c. Defendants' occupancy of the Residence prior to paying the total Contract Price constitutes Defendants' complete acceptance of the Residence; and

d. HBJD is relieved of any obligation to provide the warranty specified in Paragraph 17 of the Contract as a result of Defendants' breach of Section 9.3.

## COUNT V – BREACH OF CONTRACT
### (As to Craig Sortor Only, Liquidated Damages)

60. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 59, above, as if fully restated herein.

61. Pursuant to Section 15 of the Contract, Defendants were subject to a non-disparagement agreement in which Defendants agreed to refrain from making disparaging statements about HBJD that "defame, harm, disparage, or otherwise adversely affect the reputation" of HBJD.

62. After Defendants entered into the Contract and the accompanying non-disparagement agreement, Defendant Craig Sortor threatened to make disparaging comments about HBJD and its principal publicly, in an effort to obtain monetary credits and other concessions from HBJD under the Contract.

63. Additionally, after Defendants entered into the Contract, Defendant Craig Sortor created and administered a private Facebook group using an exact replica of HBJD's HOMES BY JOSH DOYLE Design® trademark and Plaintiff's phone number to lure Plaintiff's customers and prospective customers to the group. True and accurate copies of the Facebook group, created and administered by Craig Sortor, are attached hereto as *Composite Exhibit 5*.

64. Defendant Craig Sortor created and used the Facebook group to defame, harm, and disparage HBJD's reputation, providing a forum for others to criticize HJBD, and attempting to dissuade consumers from using HBJD's services.

65. Pursuant to Section 15 of the Contract, the parties agreed that any violations of the non-disparagement agreement would result in $5,000.00 per violation of said provision.

66. Defendant Craig Sortor violated Section 15 of the Contract when he created and administered the Facebook group containing negative and disparaging comments regarding HBJD.

67. Defendant Craig Sortor violated Section 15 of the Contract when he posted or otherwise communicated statements that had a defamatory, harmful, or disparaging effect upon HBJD's reputation.

68. As a result of Craig Sortor's breach of the Contract, HBJD is entitled to said liquidated damages in the amount of $5,000.00 per violation of Section 15 of the Contract.

### COUNT VI – TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### (As to Craig Sortor Only)

69. Plaintiffs incorporate by reference the allegations contained in paragraph 1 through 68, above, as if fully restated herein.

70. Defendant Craig Sortor created and administered a private Facebook group using an exact replica of the marks HOMES BY JOSH DOYLE Design® and HBJD, as well as Plaintiffs' phone number to lure HBJD's customers and prospective customers to the group. *See Composite Exhibit 5*.

71. Defendant Craig Sortor used the Facebook group to defame, harm, and disparage HBJD's reputation.

72. A valid expected business relationship existed among Plaintiffs and at least one customer in the Facebook group, created and administered by Defendant Craig Sortor, as there was a reasonable likelihood of business relationship based upon communications between the same.

73. Defendant Craig Sortor had knowledge of the expected relationship between HBJD and the expected customer.

74. By and through his Facebook group, Defendant Craig Sortor intentionally interfered with the expected business relationship of the customer and HBJD by spreading negative and disparaging commentary.

75. As a result of Defendant Craig Sortor's actions in regard to the Facebook group, the customer terminated the expected relationship with HBJD.

76. HBJD's loss of the expected business relationship has caused Plaintiffs to suffer future damages in an amount to be determined at trial.

### CLAIM VII – TRADEMARK INFRINGMENT
### (Lanham Act, 15 U.S.C. § 1114)

77. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 76, above, as if fully restated herein.

78. The Trademarks owned by JA Doyle are valid, including the federally registered trademarks HOMES BY JOSH DOYLE® and HOMES BY JOSH DOYLE Design® and the common law mark HBJD, which is pending federal registration.

79. Defendants use exact replicas of the Trademarks in commerce, which causes a likelihood of confusion.

80. Plaintiffs objected and asked Defendants to cease use of the Trademarks. Defendants refuse and continue to use the Trademarks today. See *Exhibit 3*.

81. Defendants' unauthorized use of the Trademarks constitutes trademark infringement in violation of 15 U.S.C. § 1114(1)(a).

82. As a result of Defendants' conduct, Plaintiffs have suffered damages in an amount to be determined at trial. Defendants' conduct is willful, entitling Plaintiffs to treble damages under 15 U.S.C. § 1117(a).

83. The willful and intentional nature of Defendants' infringement makes this an exceptional case pursuant to 15 U.S.C. § 1117(a), entitling Plaintiffs to a recovery of its attorney fees.

84. As a result of Defendants' conduct, Plaintiffs have suffered irreparable injury to the reputation and goodwill of Plaintiffs' custom homebuilding business. Plaintiffs will continue to suffer such irreparable injury until this Court enjoins Defendants' misconduct. Wherefore, Plaintiffs are without an adequate remedy at law.

### CLAIM VIII – TRADEMARK INFRINGMENT
### (Lanham Act, 15 U.S.C. § 1125)

85. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 84, above, as if fully restated herein.

86. Defendants' conduct constitutes unfair competition with Plaintiffs in violation of 15 U.S.C. § 1125(a).

87. As a result of Defendants' conduct, Plaintiffs have suffered irreparable injury to the reputation and goodwill of Plaintiffs' custom homebuilding business. Plaintiffs will continue to suffer such irreparable injury until this Court enjoins Defendants' misconduct. Wherefore, Plaintiffs are without an adequate remedy at law.

### CLAIM IX – MICHIGAN CONSUMER PROTECTION ACT
### (M.C.L. 445.903 *et seq.*)

88. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 87, above, as if fully restated herein.

89. Defendants violated the Michigan Consumer Protection Act ("**MCPA**"), Michigan Compiled Laws Sec. 445.903, *et seq.,* by causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of services, namely an online forum purporting to offer advice on homebuilding services.

90. As a result of Defendants' violation of the MCPA, Plaintiffs are entitled to an order enjoining Defendants from continuing to violate the MCPA and to statutory damages, actual damages in an amount to be proven with specificity at trial, and for their reasonable attorney's fees.

## CLAIM X – COMMON LAW UNFAIR COMPETITION AND TRADEMARK INFRINGMENT

91. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 90, above, as if fully restated herein.

92. Defendants' wrongful actions and activities constitute unfair competition and an infringement of Plaintiff's common law trademark rights in the Trademarks within the State of Michigan in violation of Michigan law.

93. As a result of Defendants' conduct, Plaintiffs have suffered irreparable injury to the reputation and goodwill of Plaintiffs' custom homebuilding business. Plaintiffs will continue to suffer such irreparable injury until this Court enjoins Defendants' misconduct. Wherefore, Plaintiffs are without an adequate remedy at law.

**WHEREFORE**, Plaintiffs pray that the Court enter judgment in its favor and against Defendants as follows:

    i. For compensatory damages in an amount exceeding $75,000.00;
    ii. For a judgment declaring and decreeing that:

  a. Defendants' failure to provide HBJD with a completed written list of incomplete work and/or defects within ten (10) days following their receipt of communication that construction is complete constitutes Defendants' approval and acceptance of the Residence as fully completed;

  b. Defendants' occupancy of the Residence prior to paying the total Contract Price constitutes Defendants' complete acceptance of the work specified under the Contract; and

  c. HBJD is relieved of any further obligation under the warranty provided for in Paragraph 17 of the Contract.

iii. For temporary, preliminary, and permanent injunctive relief with respect to Craig Sortor's infringement upon JA Doyle's registered trademarks;

iv. For injunctive relief, statutory damages and actual damages under M.C.L. 445.911 pertaining to Defendant Craig Sortor's violation of M.C.L. 445.903;

v. For pre-judgment interest and post-judgment interest along with the costs, litigation expenses, and reasonable attorneys' fees incurred herein;

vi. For compensatory damages, pursuant to 15 U.S.C. § 1117(a), in a sum to be determined at trial;

vii. That damages be increased to the maximum of three times the compensatory damage, pursuant to 15 U.S.C. § 1117(a), due to the willful, intentional, and deliberate nature of the infringement;

viii. A permanent injunction restraining Defendant Craig Sortor, his agents, servants, employees, successors and assigns and all others in concert and privity with him from using the marks HOMES BY JOSH DOYLE, HOMES BY JOSH DOYLE Design, HBJD, or any mark that is confusingly similar to JA Doyle's marks, in connection with the purported offering of online advice forums; and

ix. For such other and further relief as the Court deems just and equitable.

Respectfully submitted,

EASTMAN & SMITH LTD.

/s/ *Mark W. Sandretto*

Mark W. Sandretto (P74007)
Charles E. Hatch (P84220)
One SeaGate, 24th Floor
P.O. Box 10032
Toledo, Ohio 43699-0032
Telephone: (419) 241-6000
Fax: (419) 247-1777
E-mail: mwsandretto@eastmansmith.com
cehatch@eastmansmith.com

Attorneys for Plaintiffs
HBJD Corporation and
JA Doyle, LLC

5824221.7